failure to state in the warrant the names, residences and amounts of the debts of creditors, and the false return of the messenger, are sufficient irregularities to set aside the proceedings before had.

[Cited in Re Archenbrown, Case No. 504.]

In bankruptcy.

HALL, District Judge. The discharge of the bankrupt in this case was not opposed; but upon the hearing of the application therefor, under the usual order for creditors to show cause, it was stated by the counsel for the bankrupt that it had been discovered that the notice of the first meeting of creditors to prove their debts and choose an assignee had not been published in one of the newspapers designated for that purpose in the warrant issued by the register, and that he was not aware of the fact until just prior to the hearing upon the application for a discharge. It was stated that the return of the messenger set forth that such notice had been duly published; but as it was conceded that this return was false, and that the notice had never been published in one of the papers designated, this fact must be considered as properly before the court. As this was the notice required by statute, in order to give to creditors and others in interest notice of the pendency of the bankrupt's petition, the omission to publish such notice is such an irregularity as cannot be disregarded. The creditors have not had the notice the statute requires to be given them, that they may take measures for the protection of their interests, and it cannot therefore be decreed that all the requirements of the law have been conformed to by the bankrupt. It was his duty, or that of his attorney, to see that these notices were published; or at least to see that a proper affidavit of such publication was before the register, before the appointment of an assignee.

On looking into the papers it appears that the warrant first issued by the register, and which ought to have contained a list of the creditors of the bankrupt, with their respective places of residence, and the amount of their respective debts, with directions to serve a notice containing such list and statements upon each of such creditors, contained no list of creditors; but in lieu thereof, such warrant contained a statement that "the names of creditors in the schedule annexed to the duplicate copy of the petition of said bankrupt could not be read." If this were true the obvious course for the register to pursue was to decline to issue any warrant until a proper and legible copy of the petition was furnished; and it is not surprising that a case in which so gross an irregularity was allowed to occur, almost at its very inception, should exhibit other inexcusable blunders. The next of these is found in the messenger's return to this warrant, which states that the publication of the notices in the two papers in which it was directed to be published, although, as before stated, it

is now conceded that it had been published in only one of them. It is clear that the messenger could have had no proof of the publication, and, though bound by the express terms of his official oath to make true return to his warrant, he made a return not warranted by the facts—probably without taking any measures to ascertain whether it was true or false. Subsequently the schedule of the bankrupt was amended by inserting a statement of debts which had been previously omitted because they were barred by the New York statute of limitations, and thereupon a new warrant was issued directing service, by mail, of notice of an adjourned meeting of creditors, but not directing any publication of notice of such meeting; and it was under these notices that the meeting to choose an assignee, &c., was held.

The proceedings under the first warrant, and indeed the issuing of such a warrant, was a gross and palpable blunder, and one which ordinary care and a reasonable observance of the general orders in bankruptcy and the general rules in bankruptcy adopted by this court would have prevented. The fourteenth general order requires all petitions, and the schedules therewith, to be printed or written out plainly; and the third rule in bankruptcy adopted by this court, requires that all papers filed in proceedings in bankruptcy shall be written in a fair and legible hand, or else printed; and there was, therefore, no possible excuse for filing with the register a paper which could not be read. The twenty-eighth general rule of this court in bankruptcy, as amended, requires that due proofs of the publication of the notices directed by the warrant be furnished to the messenger, and filed with the papers or proceedings to which they related,—that is, with the warrant and return. If this requirement had been regarded, the neglect of the messenger in failing to procure the due publication of the notice would have been discovered, and the meeting could have then been adjourned, and a new notice given as required by the twelfth section of the bankrupt act; and no other delay or unnecessary expense would have been incurred. As the case now stands, most of the proceedings already had must be set aside, and the same proceedings had with due regularity; and the party must be careful to renew his application for a discharge within the year from the adjudication in bankruptcy.

---

## Case No. 5,923.

### In re HALL.

[15 N. B. R. 31.][1]

District Court, E. D. Michigan. Nov., 1876.

BANKRUPTCY—CREDITORS' PETITION — AGGREGATE AMOUNT OF DEBTS—NUMBER OF CREDITORS.

1. Under the ordinary allegation in a creditors' petition that petitioners constitute one-

[1] [Reprinted by permission.]

fourth in number, etc., and that the aggregate of their debts amounts to at least one-third of the provable debts, etc.; if it appears that the claims of several of the petitioners are each less than two hundred and fifty dollars in amount, the petition is not thereby rendered invalid.

2. In making up the requisite number, petitioners may compute those simply whose debts exceed two hundred and fifty dollars, or they may proceed upon the hypothesis that they represent one-quarter of the entire number of creditors, in which case those of less amount than two hundred and fifty dollars may be reckoned.

On motion to dismiss creditors' petition upon the ground it did not set forth that the requisite number of creditors had joined in it.

W. E. Jackson, for debtor.

E. Y. Swift, for petitioning creditors.

BROWN, District Judge. By section 39 of the bankrupt act [of 1867 (14 Stat. 536)] as amended, a debtor may be adjudged a bankrupt "on the petition of one or more of his creditors, who shall constitute one-fourth thereof, at least, in number, and the aggregate of whose debts provable under this act amounts to at least one-third of the debts so provable;" * * * "and in computing the number of creditors, as aforesaid, who shall join in such petition, creditors whose respective debts do not exceed two hundred and fifty dollars shall not be reckoned." But to this provision there is a qualification that "if there be no creditors whose debts exceed said sum of two hundred and fifty dollars, or if the requisite number of creditors holding debts exceeding two hundred and fifty dollars fail to sign the petition, the creditors having debts of a less amount shall be reckoned for the purposes aforesaid." The petition in this case contained the ordinary allegation "that the petitioners constitute at least one-fourth in number of the creditors of said Robert L. Hall, and that the aggregate of their debts provable under the said acts amounts to at least one-third of the debts so provable." As it appears, upon the face of the petition, that of the twelve creditors who signed it, but two of them held claims exceeding two hundred and fifty dollars, it is insisted the petition is invalid. It is conceded that in order to force a party into bankruptcy there must unite at least one-third of the creditors in amount, irrespective of the magnitude of their claims. It is claimed, however, that as but two creditors hold claims of over two hundred and fifty dollars, the requirement of the statute as to number is not complied with. In support of this is cited the Case of McKibbin [Case No. 8,859], decided by this court.

It will be observed that in section 39 there are two theories or bases upon which the number may be computed, and the petitioning creditors apparently have an option in making up the requisite proportion. They may compute those simply whose debts exceed two hundred and fifty dollars, in which

case only creditors representing that amount should join to make up the number; or, if the requisite number of those holding that amount fail to sign or are not procured, they may proceed upon the hypothesis that the petitioning creditors represent one-quarter of the entire number of creditors, in which case those of a less amount than two hundred and fifty dollars may be reckoned. The difficulty in the Case of McKibbin was occasioned by the peculiar language used in the petition. It was not the ordinary allegation that is found here, but it was averred that the petitioners "constituted at least one-fourth in number, upon the basis of two hundred and fifty dollars and upwards, of the creditors of said James McKibbin." Now as it appeared that, of the seven petitioners, only five held debts to the amount of two hundred and fifty dollars and over, there was evidently a failure to sustain the allegation that the petitioners constituted a fourth in number, upon the basis of two hundred and fifty dollars. It was held that the names of those two could not be stricken out as surplusage, and that the court could not regard the petition as that of the remaining five creditors under that allegation. The case was practically decided upon the peculiar language of the petition. The result, even then, might have been different had the petition averred that those of the petitioners whose debts exceeded two hundred and fifty dollars constituted one-fourth at least in number, upon the basis of two hundred and fifty dollars, and that the aggregate of the debts of all the petitioners provable under said acts amounted to at least one-third of the debts so provable. But, under the allegation here used, I think the creditors were at liberty to make up the requisite number, either by computing those only whose debts exceeded two hundred and fifty dollars, or by uniting one-quarter in number of all the creditors. That they have chosen the latter course is evident from the fact that ten of the twelve creditors hold claims of less than two hundred and fifty dollars. No allegation is necessary that the larger creditors were applied to and refused to join, because the language of the section is that if they fail to sign the petition, from whatever cause the failure proceeds, smaller creditors may be reckoned. This was practically the view taken by Judge Lowell in the Case of Currier [Case No. 3,492], and I coincide with him in his interpretation of the law. It seems to me that the ruling in this case applies with full force here, and that the creditors have chosen to base their allegation upon the fact that one-fourth of the entire number have petitioned to have the debtor adjudged a bankrupt. Had the petition followed the language of the Case of McKibbin, where it was expressly based upon the petition of one-fourth of the number of creditors, and it appeared upon the face of the petition that several creditors were of small amount, I should have held the peti-

tion invalid; but I think this case clearly distinguishable from that, and that it falls rather within the rule laid down in the Case of Currier above cited. The exceptions to the petition are therefore overruled.

## Case No. 5,924.

### HALL'S DEPOSITION.

[1 Wall. Jr. 85.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1843.

PEDIGREE—HEARSAY—PRESUMPTION OF DEATH.

1. Presumption of death does not arise from the fact that a person who twenty-two years ago was in "bad health," would, if now living, be eighty years old; not even although on recent inquiry his name was not known at the post-office of a large city, (his former residence,) nor inserted in its directory:—there being no evidence of the sort nor degree of bad health, nor of inquiries having been made about him among his friends, nor of his having ever left the place of his former residence.

2. The question whether or not declarations post litem motam are evidence in matters of pedigree, is largely examined on the authorities, English, American and continental; and the court declares, in opposition to rulings in this circuit temp. Washington, that they are not: but these rulings are not positively overthrown; the case going off on the point stated in the first paragraph.

[Cited in Banert v. Day, Case No. 836.]

In ejectment the plaintiff claimed title through J. P. who was alleged to be heir at law of the original owner; and to prove the heirship, offered in evidence the deposition of one Zebulon Hall, regularly taken in New York, A. D. 1822, in an ejectment then pending in this state, for other land by this same plaintiff against a different defendant, and where the fact in dispute was the heirship. The evidence was offered not as a deposition, but as a declaration concerning pedigree. As ground for the offer it was proved that when Hall's deposition was taken, in 1822, he was fifty-nine years old, and in bad health; that on recent inquiry at the New York post-office, no person named Zebulon Hall was known there, and that the name was not found in any late New York directory. Hall lived in New York when his deposition was taken. No evidence was given to shew the nature nor the extent of Hall's bad health; nor that his name had been in more ancient directories; nor that he had ever left New York; nor that prior to offering the deposition any inquiry had been made concerning his friends or relatives, or whether they knew any thing of his existence or death.

For the evidence it was argued, that the balance of probability preponderated in favor of Hall's death. He would, if alive, be 80 years old; an age to which but a small majority even of the persons who reach 50, ever attain. This was true of persons favoured by robust health. But here is a man whose health

is bad. It is not necessary to inquire into the diagnosis of his case. "Bad health," means health that is likely soon to decay. We are thus asked to suppose, that a sickly, diseased man has reached an age which even the robust are rarely so strong as to be able to attain. A specifick danger is always to be regarded, when there is a question as to a presumption of death. Watson v. King, 1 Starkie, 121; Sillick v. Booth, 1 Younge & Coll. Ch. 117, 120. The case of ill health, and that of age also, is mentioned in the books. See Webster v. Birchmore, 13 Ves. 362, where "a very bad state of health" was a strong circumstance in accelerating a presumption of death; though, indeed, there were others in that case. In Rex v. Inhabitants of Harborne, 4 Nev. & M. 341, 345, Lord Denman asks: "Can there be the same presumption as to a party who is 100 and one who is 35; as to a party who was in good health when last heard of, and one who was proved to have then had a disorder upon him which was likely speedily to terminate in his death? It cannot be." The continental jurists speak the same language. Among several questions to be put by the judge before a decision involving a presumption of death, is this: "Cujus esset aetatis ille absens? An is absens sui natura esset robusti vel debilis corporis?" Menochius de Presumptionibus, lib. 6, pr. 49. Then Hall's existence was unknown at a department which, by its duty and employment, is conversant with the names of all residents in its neighbourhood; nor is his name to be found among those where the residents of a city are oftener recorded than omitted. Any one of these facts would afford a presumption of death. All four united afford a strong presumption. Death being presumed, the declaration is clearly admissible in this circuit. This point was settled in Boudereau v. Montgomery [Case No. 1,694], where, after full argument at the bar, and an able opinion from Judge Washington, depositions like the present were read to the jury. The same point had been ruled in Banert v. Day [Id. 836]; and, as we may infer from that case, had been decided in Hurst v. Jones [Id. 6,934], under the former organization of this court. It is not at all necessary to inquire into the decisions of other courts: our own practice is settled.

BALDWIN, Circuit Justice. Supposing Hall's death to be proven, the same question arises here as we find in Boudereau v. Montgomery [supra]. That decision is one which I had occasion to consider a good deal in a suit which came before me a few years ago. I then felt reluctant to overrule it: the same reluctance yet exists. I feel, that in the first place it is a precedent, and, yet more, that it is a precedent left to us by a judge of great learning, of the utmost patience, and largely endowed with that finest, rarest, last betrayed of the qualities of human intellect; I mean with good judgment. I can never dissent from my honoured predecessor,

---

[1] [Reported by John William Wallace, Esq.]